Formal Surgical, LLC, v. Jeff Brown Hi, I'm Frank Gersow. I represent Jeff Brown, the appellant. Jeff was a very successful medical supply salesman. He worked for Thermal Surgical, a distributor of surgical supplies provided by the manufacturer Nuvasiv, I think it was Inc. He had a very successful practice, but then a big drop in sales occurred in his New Hampshire practice, specifically one hospital. They just dried up almost completely, and he was fired. He was a man without a job, and he had to go to work somewhere. He went to work for another medical supply company. He was immediately sued by Thermal Surgical for breach of a non-compete agreement, and he defended himself, saying the products that he was selling for his new employer were not in competition with the spinal surgery products that were sold by Thermal Surgical. I hate to interrupt, but I'm worried that we're going to run out of time before we get to the nut of the issue here. I want to fast forward and ask you a question. The nut of the issue has to do with the effect of the allowance of the proof of claim in the bankruptcy procedure as it impacts the separate district court proceedings. I'm wondering what your position is on the question of if the employers here had come back to court after the bankruptcy proceeding, and they had sought damages in excess of the $300,000 reflected in their proof of claim, would they have done that? They, in fact, did do that. What happened was they came back and Thermal Surgical moved for summary judgment for the amount of its claim. Nuvasiv filed for summary judgment for the amount of its claim, and both of those were denied properly by Judge Sessions. And so I don't think there's an issue as to whether they exceeded the amount in the proof  It's a hypothetical, right? And it bears on this question of what the legal significance is of the allowance of the proof of claim. Yes. And so my question for you is if, let's take Nuvasiv out of it because they're not here, right? And if Thermal had come back and said, our damages are $500,000, and they sought to litigate that question in the district court, could they have done that? Or would they have been precluded by the bankruptcy court's acceptance of the allowance of the claim of $300,000 from saying, no, our damages, in fact, were more? Well, I would say that we're not precluded because I don't think the proofs of claim were actually litigated in any way, shape, or form. What happened was both of these purveyors filed adversary proceedings avoiding discharge. After negotiations, my client did not fight that and said, okay, I'm not going to be discharged on these two cases. And the Thermal surgical case was already on the docket in the district court. He had every expectation that, okay, we're going to fight this out of the district court. If that was true, why did the settlement, the bankruptcy court sort of went to the trouble of reducing the Nuvasiv claim by a certain amount? If these allowances were essentially irrelevant, what was the reason that the settlement involved adjusting those amounts? You'd have to ask the bankruptcy court. My client did not litigate. He did not show up and argue until subsequently when Nuvasiv brought their lawsuit and he did extensive discovery, was able to prove that he was not the reason for these lost sales. And Nuvasiv dismissed their case without consideration and with prejudice. Once he had... Your client filed a joint motion with Thermal surgical for an entry of a stipulated order resolving the adversary proceeding. Yes. But also it's basically including the $300,000 allowance of claim for Thermal surgical saying, okay, that as part of the settlement, we're not going to contest that. I don't recall that. It wasn't approved by the court. And I was trying to figure out and I was going to ask you and I'm going to ask Ken about what happened to that stipulation and why did the court go a different direction? Do you know? The court being the district court or the bankruptcy court? I don't know. I wasn't there. My client didn't show up for the hearing. I don't know. But I do know that it was far from fully litigated. But we've said, sir, in EDP, which you don't cite in your opening brief, which I found disconcerting because it seems to me the case that really matters here. We've said, well, I'll just tell you what we said. Res judicata does not require the precluded claim to actually have been litigated. Its concern rather is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate. So you keep telling us your client chose not to show up. You chose not to show up. You chose not to fight because he was thinking he would fight another day. He was wrong about that under our law. That's the problem. I get that maybe he's disappointed now to find out he was wrong. But isn't our law pretty clear that once he had the chance and he chose to let this go forward, he stuck with it? I think it's more than just a mere opportunity. I think it's an opportunity to do some discovery and defend yourself and then see how the chips fall. So which element of res judicata is missing? There's four elements, right, of res judicata. Which one's missing here? Well, I think that it wasn't properly litigated. There was no litigation. My client didn't even show up at the hearing. Is that necessary? I'm trying to distinguish between what we used to call collateral estoppel and what we now try to call issue preclusion. Right. Does seem to require some actual litigation. Yes. And res judicata, which I've never understood to require anything other than the opportunity, which it seems like your client forewent. No. Well, I would disagree with that. I think, you know, res judicata says, listen, we've been here before, same parties, same facts. We've litigated it. We've fought it out. It's got to be more than just an opportunity, especially for this man to throw out these proceedings or self-represent it quite often. So I think fully litigated is what happened to the Navasiv case. We went back with the Navasiv case. We did discovery. We found out that my client was not the reason for the drop in sales, that the surgeons involved had negotiated with Thermal Surgical. They wanted greater opportunities, and that's spelled M-O-N-E-Y, and they were denied. And once those facts came out, Navasiv, which started out with a $1.2 million claim, decided to settle the case without compensation and with prejudice. That's what fully litigated means. It has to be more than the mere opportunity, especially for, you know, someone who is quite often representing himself and, you know, didn't have a lot of money on lawyers. It was not entitled to the preclusive effect of res judicata. Plus, the judge initially denied two motions for summary judgment. Okay. I think unless we have further questions now, we're going to hear from you again in a few minutes. So thank you for your arguments, and we'll hear from Attorney Gallagher. Okay. May it please the Court. Mary Taylor Gallagher on behalf of the Appley Thermal Surgical. This Court should affirm the District Court's order granting summary judgment for two reasons. First, the District Court did not abuse its discretion when it reconsidered and revised its own interlocutory order. And second, the District Court did not err when it found that the bankruptcy court's order was a final judgment to which res judicata applies. So one of the things that's weird about that to me is this isn't a collection action. They're not, if we were treating that as a final judgment, then your client, the claim would have been, I'm suing on the judgment, right? Yes, Your Honor. So procedurally, Thermal Surgical had filed suit in District Court against the appellant for breach of his employment agreement, his non-compete for breach of duty of loyalty. That case was litigated for a year before the appellant filed for bankruptcy protection.  But when you came back for summary judgment, you didn't see summary judgment as a means of collecting the judgment from the District Court as a collection, which usually would, I mean, it's not a thing, right? Because usually that would have happened in the bankruptcy court case. It would have been money and there would have been a discharge. Right. Instead, the case proceeded on the underlying claim. So what happened in the bankruptcy court was a little unusual in that the appellant filed for bankruptcy protection. Both the bankruptcy trustee and ultimately the U.S. attorney got involved as a result of the adversary proceeding that Thermal Surgical and Nuvasiv filed against the appellant for hiding assets. And once the U.S. attorney got involved, after both Thermal Surgical and Nuvasiv had filed their proofs of claim, the U.S. attorney got involved. And once that happened, the appellant agreed to waive his right to a discharge because of the allegations and the investigation. So once he's done that, I'm wondering whether the reasoning of EDP, how it fits with a scenario where there's not actually a discharge and there's a pending District Court case, why isn't, as Attorney Urso has advocated, the better understanding of what happened there that the parties sort of understood that, okay, we're going to go back to the District Court. We're going to distribute a little bit of money here that we've got, but we're basically going to go back to the District Court and duke it out there on the merits of these claims. Okay. So two points, Your Honor. First, Mr. Brown did not raise before the District Court the argument that his waiver of discharge somehow changed whether the bankruptcy court's order was a final judgment or not. The argument was not raised before the District Court, and therefore, he's waived that argument before this Court. But second point, Your Honor, is that when Mr. Brown agreed to the waiver of discharge, we weren't starting back over. When we were in bankruptcy court, because he filed bankruptcy, and partly in response to this lawsuit brought by Thermal Surgical, when he waived discharge, all that was happening is that once the proof of claim was allowed, and it was $315,000, and once Thermal Surgical received their portion of the distributed assets, it reduced that amount that Mr. Brown owed to Thermal Surgical to about $302,000. So you couldn't have sought more than the $300,000? Your question that you asked, counsel, we could not have sought more. Had we gone back to the District Court once the stay was lifted and said, well, we know we got this proof of claim, and we told the bankruptcy court that the total amount that Mr. Brown owed to us was $315,000. But, Your Honor, now we're telling you that it's $500,000. Res judicata would have applied to that as well, because the bankruptcy court's order is a final judgment. So what do we do with it? I take your point. EDP was clear on the status of the bankruptcy court's final judgment, at least insofar as, I mean, and I think this might be an important qualification, insofar as the debtor had an incentive to contest it. We wouldn't treat it as a final judgment in a case where the state was so insolvent that contesting it wouldn't have had any impact on any residue left for the debtor. But courts generally apply res judicata in a defensive manner, right, as a defense to a claim. And I think the Supreme Court has expressed skepticism about the notion of an offensive use of what we call claim preclusion, which by definition is a preclusive argument. How do we get over that hurdle in this case?  Two things in response to that, Your Honor. First, in this situation, Mr. Brown had an even greater reason to challenge the proof of claim before the bankruptcy court because he wasn't being discharged. If he were being discharged, you know, the assets are what they are, and part of the bankruptcy estate, and whatever gets split up is what's split up, and he's discharged and he goes on his way. That's not what was happening here. Right. Although that argument relies on you being right on the law, right? So it sort of chases its tail a little bit because if he's right on the law, then he didn't have any incentive at all. So back to the question about the difference in Park Lane, Your Honor, the difference between collateral estoppel and res judicata. In collateral estoppel and in Park Lane, that was a situation where the plaintiff was attempting to use offensive collateral estoppel against a defendant that was not a party to the prior litigation. Here, the four questions for the court to consider are whether res judicata applies, not whether it's collateral estoppel, whether it's res judicata. And that's, one, whether the prior decision was a final judgment on the merits. Well, we know from EDP that in the Second Circuit, a bankruptcy order adjudicating an uncontested proof of claim is a final judgment on the merits. So that first point is proven. Second is whether the litigants were the same parties. Well, that's undisputed. Thermal Surgical and Mr. Brown were the parties before the district court. They were the parties before the bankruptcy court. And they were the parties when they came back to the district court on the same claim. Whether three, the prior court was of competent jurisdiction. Well, this was the United States Bankruptcy Court. So that is undisputed there. And finally, whether the causes of action were the same. And the whole reason they were in bankruptcy and the claim that Thermal Surgical filed its uncontested proof on was the lawsuit filed in district court. Those are the four points for this Court to consider. So can you give an example of this Court blessing the offensive application of claim preclusion relying on those factors? Your Honor, we could not find any cases in the Second Circuit. And we discussed that in our brief. We did cite two cases in other circuits where courts allowed the offensive use of res judicata. What was the nature of the litigation? There was no true litigation in the Bankruptcy Court on this question. And that's, I guess, why you're relying on res judicata instead of issue preclusion. But this would be unusual to use res judicata in an offensive way. And if we focused on the issue preclusion part, you don't meet the test, right? If we focus solely on issue preclusion, then we look to the question that the Supreme Court in Parkland talked about, which is whether the defendant had a reason to vigorously defend against the allegation. In this case, it would be the proof of claim. That was a 500-page proof of claim filed by Thermal Surgical, laying out why it was entitled to a claim, a judgment in the amount of $315,000. Appellant chose not to contest that. And the question is whether he had a reason to contest it. Indeed, he did. Because once that is being discharged... Yeah, but it wasn't discharged. Yes, Your Honor. Had it been discharged, I would argue he would have had less of a reason to defend against it. Because the bankruptcy estate, the amounts would be what they were. Here, if it's not being discharged, then he's now waived his right to contest the amount. What it seems is happening here is that the appellant is saying, I didn't understand what the effect of waiving discharge was. I didn't understand that when Thermal Surgical filed their proof of claim, that if I didn't contest it, there would be some sort of adverse consequence to me. But you've just said there's no case law that he would have been able to look at to give him that understanding in our circuit, where it would be offensively... I mean, again, this is the chasing tail problem, right? We're going to focus on his incentives. His incentives depend largely on his knowledge of a rule of law that you're telling us is the right rule of law. So if we rely on his incentives to establish that rule of law or recognize that rule of law, it's circular to me. Because we could not find any cases specifically in this circuit that affirmatively authorized the use of offensive race judicata, it does not mean that the converse is true, that there is no scenario in which offensive race judicata can be allowed. And in fact, even if we were looking at the fairness factors that the Supreme Court in Parkland looked at for collateral estoppel, in that case, the Supreme Court said the offensive use of collateral estoppel was allowed. And so if Mr. Brown is displeased with the advice that he was given by his bankruptcy counsel that he was represented by before the bankruptcy court, bankruptcy counsel with 35 years of experience, that is not before this panel. That is something that he can take up with his prior counsel. The question before this panel is whether the district court erred in finding that all four factors applying race judicata were met here. And it is our position, Your Honors, that the district court did not err that all four factors were met and that following this court's precedent in EDP, the district court correctly found that a bankruptcy court order on an uncontested proof of claim is a final judgment to which race judicata can apply.  Thank you. Thank you, Your Honor. We'll hear again from Mr. Urso. Before I get into race judicata, I'd like to remind the court of the other issue that we raised, and that is whether reconsideration was proper here. Are we even allowed to review the grant of reconsideration? Our case law is a little skeptical of whether that's even reviewable, the grant of reconsideration. Well, I would disagree. I think the Virgin Atlantic case says you can only reconsider if there are three elements. I'm talking about our ability to review the grant of reconsideration. There's case law that suggests that we should not review the grant as opposed to the denial. Lots of cases where we review denial of reconsideration, but there is case law that says that we shouldn't review the grant of reconsideration. If you don't have any response to that, that's fine. We can move on to the subsequent. Yeah, I don't have a response to that. But the Virgin Atlantic case, in favor of judicial economy, says we're not going to do this again unless there's a change in law, new evidence. To the contrary, there was evidence that my client had nothing to do. Nothing changed. You're saying nothing changed. Excuse me? You're saying nothing changed. No. Right. And to avoid manifest injustice. You know, the case should not have been reconsidered. But as for the Res Judicata case, my client had zero incentive to litigate in the bankruptcy proceeding. The thermal surgical case was still on the docket in the District Court of Vermont. And it was going to be tried. There was going to be discovery. He didn't have a lot of money for lawyers. And he should have been given that opportunity. Well, I suppose if the rule of law is what Attorney Gallagher suggested, that he had a big incentive because his failure to litigate in the bankruptcy court essentially bound him to a judgment that he was then stopped. Well, I don't think he could have foresaw that. And I think that's an erroneous conclusion. So, you know, just consider this. When he went back and Nuvasiv then filed its own suit, which was consolidated because the facts were identical. One, thermal surgical was a distributor who made commissions. Nuvasiv was the manufacturer. Nuvasiv claimed a third-party beneficiary on his non-compete agreement. When we were permitted to do discovery, we found out that the reason for the drop in sales were that the surgeons were unhappy with their compensation. And as a result, this claim... I'm sorry to cut you off, but we're a little over. And your brief does cover what happened in Nuvasiv litigation. So I think we have that point. Appreciate your arguments. Thanks for your time. Take this under advisement. Thank you both.